# In the United States Court of Federal Claims

No. 16-310C
(Filed: April 19, 2017)

| | |
|---|---|
| PRESTON A. MCCORD,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Keywords: Tucker Act; 28 U.S.C. § 1491;<br>Military Disability Pay; Army Board for<br>Correction of Military Records; Integrated<br>Disability Evaluation System; Joint Pilot<br>Program; Remand. |

*Jason W. Manne*, Pitt Law Veterans Practicum, Pittsburgh, PA, for Plaintiff.

*Mikki Cottet*, Senior Trial Counsel, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, Washington, DC, with whom were *Deborah A. Bynum*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General, for Defendant. *Maj. Patrick M. McGrath*, Litigation Attorney, U.S. Army Legal Services Agency, Ft. Belvoir, VA, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Judge.**

Plaintiff Preston McCord served in the United States Army from 2008 through 2012. While in the Army, he injured his lower back. He was later evaluated for possible disability retirement through a joint Department of Defense/Department of Veterans Affairs disability evaluation program which was then being piloted. As part of that program, the Department of Veterans Affairs (DVA) initially assigned Mr. McCord a proposed disability rating of twenty percent for a disability described as "degenerative disc disease of the lumbar spine, with radiculopathy of the left lower extremity." Then, in adjudicating whether Mr. McCord was fit for duty and, if not, whether he was entitled to medical retirement benefits, the Army's Physical Evaluation Board (PEB) adopted DVA's description of Mr. McCord's disability as well as its proposed rating of twenty percent for that disability, in finding Mr. McCord unfit for duty.

Because his disability rating was less than thirty percent and because he had less than twenty years of service, Mr. McCord was not entitled to medical retirement benefits. Therefore, he was discharged with severance pay only. A few months after Mr. McCord was discharged, however, DVA issued a final decision on his VA/DOD joint disability evaluation claim. While its initial decision, as noted, had assigned a twenty percent rating for the combined condition of degenerative disc disease, with radiculopathy, in its final decision DVA assigned a twenty percent rating for degenerative disc disease and a separate ten percent rating for Mr. McCord's

radiculopathy. Mr. McCord then applied to the Army Board for Correction of Military Records (ABCMR) to correct his discharge disability rating to a thirty percent combined disability in light of DVA's final rating. The Board denied Mr. McCord's application and he filed suit here.

Now pending before the Court are the parties' cross-motions for judgment on the administrative record. For the reasons set forth below, Mr. McCord's motion for judgment on the administrative record is **GRANTED** and the government's motion is **DENIED**.

## BACKGROUND

### I.     Mr. McCord's Enlistment and Initial Injury

Mr. McCord enlisted in the United States Army Reserve through its Delayed Entry/Enlistment program on October 7, 2008. Admin. R. (AR) Tab 24 at 544.[1] At the time of his enlistment, Mr. McCord completed a "Report of Medical History" in which he responded "Yes" to the question whether he was "[c]urrently in good health." Id. Tab 23 at 510. He checked the box for "No" when asked whether he had ever experienced "[r]ecurrent back pain or any back problem." Id. The physician who performed his medical examination at the time of his enlistment recorded a normal spinal examination. Id. at 514.

On December 30, 2008, Mr. McCord entered active duty service. Id. Tab 24 at 547; see also id. Tab 10 at 117. During basic training, in approximately March or April 2009, Mr. McCord injured his back when he tripped after stepping in a hole while running with his rucksack on his back. Id. Tab 19 at 164 (Medical Evaluation Board (MEB) report describing history of condition); see also id. at 198 (notes of family nurse practitioner). As described in greater detail below, after this incident, Mr. McCord began experiencing chronic pain in his back, which ultimately radiated down his left leg, and worsened over time. Id. at 198; see also id. Tab 23 at 396 (reporting to nurse at NMC Portsmouth that "[l]ower back pain radiating down left leg to ankle" began when he fell in March 2009).

### II.    Deployment and Subsequent Medical Treatment

On March 26, 2010, the Army notified Mr. McCord that he would soon be deployed to Afghanistan for a one-year tour of duty. Id. Tab 24 at 530. Mr. McCord was then stationed in Afghanistan from June 1, 2010, through October 6, 2010, when, as described below, he was transferred out for medical reasons. See id. at 522.

Thus, while in Afghanistan, Mr. McCord continued to report and seek treatment for lower back pain as well as the associated pain in his left leg. See, e.g., id. Tab 23 at 421–25. On July 17, 2010, he sought and received medical treatment for "[l]eft lower back pain radiating to [his] left leg." Id. at 424. On July 31, 2010, he again sought treatment, now complaining that he was experiencing "shooting pain down [the] left side of [his] leg" and that "[his leg] lock[ed] up when running." Id. at 422. Mr. McCord was given medication and was advised to limit his activities. Id. at 423. The provider also recorded that the "symptoms down [the] left leg . . . have

---

[1] Citations to the Administrative Record are to the corrected Administrative Record filed by the government on March 15, 2017. ECF No. 30.

been present only the past month," that there was weakness in left hip flexion, and that Mr. McCord should undergo physical therapy and diagnostic imaging. Id.

Several months later, on October 1, 2010, while still stationed in Afghanistan, Mr. McCord again sought treatment. Id. at 411. Army medical records indicate that he "return[ed] for continued symptoms of back pain with radiation down his left leg." Id. Physical examination revealed that he had decreased strength in left hip flexion and extension. Id. Because of Mr. McCord's "lack of response to conservative measures," the Army determined that "further evaluation" was warranted, including an MRI. Id. at 412. Accordingly, medical staff completed "[m]edevac paperwork" for Mr. McCord and he was transferred out of Afghanistan for further evaluation. See id.; see also id. at 406–10.

Mr. McCord was then seen and evaluated at Landstuhl Regional Medical Center in Germany. See id. at 406–10. He reported an eighteen-month history of lower back pain. Id. at 406. Specifically, the evaluating physician assistant, Steven Lackie, recorded that Mr. McCord had been suffering from "intermittent and significant back pain" ever since he "was running with a ruck and tripped and fell" in "basic training." Id. at 406–07. Mr. McCord also reported that during his deployment to Afghanistan, he had experienced "significantly more severe" symptoms, "with pain radiating into his left lower extremity." Id. at 407. PA Lackie's physical examination revealed an "extremely limited range of motion to both flexion and extension secondary to guarding," but no "consistent tenderness, nor spasm or trigger points." Id. at 408. Additionally, PA Lackie recorded a negative straight leg raising test to 60° bilaterally "with distraction," but noted that "otherwise patient complains of significant LS pain approximately 20° on the left." Id.[2] He diagnosed Mr. McCord with "significant LS pain (significant subjective overlay)" and ordered x-rays and an MRI. Id. at 408–09.

An MRI was taken on October 7, 2010. It revealed "[m]ild degenerative disc dessication [sic] at L3-L4; no significant lumbar spine spondyloarthropathy; [and that] the spinal cord, conus and nerve roots [were] normal." Id. Tab 19 at 183. PA Lackie indicated that the imaging revealed "early evidence of degenerative disc disease at L3-4 and L4-L5 with minimal changes to consider facet syndrome." Id. Tab 23 at 405. Because "[e]ffective treatment [would] likely exceed the resources available in theater," PA Lackie recommended that Mr. McCord be transferred to the continental United States for further care. Id.

Consistent with PA Lackie's recommendation, on October 11, 2010, Mr. McCord was temporarily transferred to Fort Eustis, Virginia. Id. Tab 24 at 529. Mr. McCord was seen at NMC Portsmouth on October 13 and 14, 2010, and diagnosed with lumbago. Id. Tab 23 at 391–97. He was prescribed physical therapy and referred for pain management. Id. at 393.

On November 29, 2010, Mr. McCord visited the pain management clinic at NMC Portsmouth. See id. at 340–41, 344–47. The medical record from that visit reflects that Mr. McCord had an eighteen-month history of lower back pain with radiation down the left leg. See

---

[2] Although the straight leg raising test is also known as the Lasegue test, Stedman's Medical Dictionary 1955, 1962 (28th ed. 2006), PA Lackie also recorded in this note that he measured a positive Lasegue test at 45° on the left, AR Tab 23 at 408.

id. at 345. According to the clinic's records, Mr. McCord's symptoms began in "boot camp" when he "stepped and fell." Id. Mr. McCord reported mild pain "aggravated by movements," as well as weakness in his left leg. Id. The clinic also recorded a chronic history of lumbar disc degeneration, a sprain of the back, facet syndrome, and lumbago, among other conditions. Id. at 340. Mr. McCord was diagnosed with lumbar neuritis, lumbago, and intervertebral disc degeneration of the lumbar spine. Id. at 341.

On December 13, 2010, Mr. McCord sought care at Kenner AHC's orthopedic clinic, where he was seen by a physician assistant, Patrick Parks. Id. at 334–37. PA Parks noted that Mr. McCord was being seen for back pain and a "military services physical." Id. at 334. Mr. McCord again reported a one-and-a-half year history of "[b]ack pain with left leg numbness and tingling." Id. at 335. PA Parks recorded that the "[n]umbness and tingling radiate[d] to the mid[-]gluteus and through the S1 dermatome left side only." Id. The physical examination revealed "guarded range of motion of the back," as well as "moderate tenderness to palpation over the left sciatic notch and lumbosacral paraspinous region" and back pain "throughout range of motion." Id. It also revealed a "positive straight leg raise of the left lower extremity" and a "positive seated nerve root tension test of the left lower extremity only." Id. PA Parks did not change the pertinent diagnoses and recommended another MRI. See id. at 336–37.

Mr. McCord returned to the clinic on December 21, 2010, after undergoing the second MRI. See id. at 330–31. He continued to report "back pain" and "left lower extremity radicular symptoms." Id. at 331. Physical examination showed that Mr. McCord was experiencing "back pain throughout range of motion and tenderness to palpation over the left lumbosacral paraspinous region"; that he was "neurovascularly intact"; and that he "[c]ontinued to demonstrate left lower extremity L5 radicular symptoms but no clear radicular findings." Id. The MRI revealed "[s]evere left-sided pedicular edema at L5." Id. Mr. McCord was given medication and referred to pain management. Id. at 331–32.

## III.  Medical Evaluation Board Proceedings Pursuant to DOD/DVA Joint Disability Evaluation Pilot

Mr. McCord continued to seek care for back and radicular complaints in the months that followed. E.g., id. at 476 (February 23, 2011); id. at 297–98 (July 29, 2011). On August 11, 2011, PA Parks conducted a follow-up exam. Id. at 295–96. Mr. McCord reported "complaints of 5/10 neck and back pain when wearing lo[ad-]bearing equipment and Kevlar for extended periods of time." Id. at 296. PA Parks noted that Mr. McCord had undergone a lumbar epidural steroid injection and neurotomy but reported "no significant relief of back pain." Id. He thus "[d]iscussed [with Mr. McCord] in detail about MEB options and referred [him] to the PEBLO [physical evaluation board liaison officer] for counseling and recommendations." Id.

Pursuant to Army Regulations, if it is determined on the basis of an examination that a soldier does not appear "medically qualified to perform duty," the soldier will be referred to an MEB "to document [his or her] medical status and duty limitations." Def.'s Mot. for J. on the Admin. R. (Def.'s Mot.) App. at A-288, ECF No. 13-1 (Army Reg. 635-40, Parts 4-9 and 4-10). Determining whether any medical condition renders a soldier "unfit," however, is not within the purview of the MEB; Army Regulations direct that the MEB's narrative summary is not to

"reflect a conclusion of unfitness," and should not use terms such as "unfitting," "disqualifying," "ratable," or "not ratable." Id. (Army Reg. 635-40, Part 4-11).

In the present case, on September 12, 2011, PA Parks reviewed all of the previously taken diagnostic images, diagnosed Mr. McCord with (among other things) lumbar disc degeneration, facet syndrome, and lumbago, prescribed medication and physical therapy, and referred Mr. McCord to "the MEB/PEB for adjudication under the provisions of AR 40-501, chapter [3-39h]." AR Tab 23 at 285; see also id. at 279–84, 286.[3]

Nine days later, on September 21, 2011, Dr. Larry Washington, acting as the military treatment facility provider, noted a diagnosis of "lumbar degen disc disease" on a form entitled "Joint DoD/VA Disability Evaluation Pilot Referral." Id. Tab 22 at 221. Mr. McCord signed the form and indicated that he did not desire to comment on the content of the referral. Id.

On September 28, 2011, Mr. McCord was counseled regarding the joint disability evaluation program then being piloted by DVA and the Department of Defense (DOD). Id. That pilot was intended to test the use of a single procedure for "assign[ing] evaluations to [a] service member's unfit conditions for use by DOD in determining a final disposition for unfit conditions as well as to determine the member's potential entitlement to DVA disability compensation." See id. Tab 17 at 145; see also Pl.'s Suppl. Mem. Attach. 1 at 3, ECF No. 28-1 (Disability Evaluation System (DES) Pilot Operations Manual stating that "[t]he DES Pilot is a Service member centric initiative designed to eliminate the duplicative, time-consuming, and often confusing elements of the two current disability processes of the Departments").[4]

Under the pilot program, DVA would, among other things, issue proposed ratings for use by both DOD (for the Army's Physical Disability Evaluation System) and DVA (for purposes of its disability compensation program). See AR Tab 17 at 145; see also id. Tab 3 at 6. These ratings would be based upon an evaluation of service members' medical records as well as on the results of a single, comprehensive medical evaluation known as a Compensation and Pension examination (C&P exam). See Pl.'s Suppl. Mem. Attach. 1 at 3–4. According to the DES Pilot Operations Manual:

> A key feature of the DES Pilot is a single disability medical examination appropriate for determining both fitness and disability

---

[3] Mr. McCord was also seen that same day by the physical therapy clinic. AR Tab 23 at 290. The evaluating therapist noted that Mr. McCord was "undergoing MEB processing for lumbar DDD" and that she had been asked to perform a range of motion evaluation "of his back and lower extremities per MEB guidelines." Id. The physical therapist found reduced range of motion in forward flexion, extension, active right lateral flexion, and active left lateral rotation. See id. at 293; see also id. Tab 19 at 171.

[4] In addition to any possible separation or disability retirement pay from the Army, a soldier may be entitled to disability compensation from DVA upon discharge. 38 U.S.C. §§ 1110, 1131; see also AR Tab 3 at 8 (ABCMR noting that the "VA awards disability ratings to veterans for service-connected conditions . . . to compensate the individual for loss of civilian employment").

as well as a single-sourced disability rating. All members in the DES will have a VA general medical examination worksheet completed plus any other applicable examination worksheets based on Service specific medically disqualifying conditions and the member's claimed condition(s). This exam provides information the Military Department Physical Evaluation Boards (PEBs) can use in determining a Service member's fitness for continued military service and meets the needs of the VA disability evaluation system rating activity site (D-RAS) in determining the appropriate disability rating to be awarded a Service member for military unfitting and member-claimed medical conditions incurred or aggravated as the result of military service. The disability rating awarded by the D-RAS, specifically for the military unfitting medical condition(s), will serve as the basis for determining a DES Pilot participant's final disposition (separation with disability severance pay or disability retirement) from military service.

Id. at 3. Thus, the C&P exam would be performed prior to the MEB's determination of whether a soldier met retention standards and would form part of the basis for that decision. See id.

On September 28, 2011, Mr. McCord submitted a "VA/DOD Joint Disability Evaluation Board Claim," which was prepared on his behalf by his assigned physical evaluation board liaison officer (PEBLO), Ebony High. AR Tab 20 at 215–16. On the form, Mr. McCord specified "lumbar degenerative disc disease" as the "Medical Condition[] to Be Considered as the Basis of [the] Fitness for Duty Determination." Id. Under "Additional Conditions," described as "disabling conditions, other than those referred for the fitness for duty examination," Mr. McCord identified gastroenteritis, a jaw condition, bilateral hearing loss, bilateral tinnitus, and bilateral vertigo. Id. at 216.

On October 15, 2011, Family Nurse Practitioner (FNP) Jane McMahon conducted Mr. McCord's C&P exam. Id. Tab 19 at 197. FNP McMahon noted that the referred condition was "lumbar degenerative disc disease." Id. at 198. She took Mr. McCord's medical history and conducted a thorough physical examination. Id. at 198–203.

As relevant to the issues in this case, Mr. McCord reported to FNP McMahon that he had "back pain [that was] sharp and burning" as well as "left leg pain [that was] shooting." Id. at 198. He stated that the pain was "in the low back, radiating down the outer aspect of the left leg," and that the left leg pain was "especially excruciating." Id. Mr. McCord reported that both his back and leg pain were constant. Id. FNP McMahon also recorded associated symptoms including numbness, paresthesias, and "leg or foot weakness." Id.

On physical examination, she found a positive "[s]traight leg raise[] (Lasegue's sign)" on the left. Id. at 201. She also noted reduced spinal range of motion in all planes along with pain and fatigue. Id. at 201–02. Finally, FNP McMahon measured reduced strength in hip flexion and knee extension. Id. at 202. She diagnosed Mr. McCord, as pertinent to the issues herein, with "DDD of the lumbar spine with radiculopathy of the left lower extremity." Id. at 203.

On October 26, 2011, Dr. Washington issued a "Physical Disability Evaluation System MEB Narrative Summary." Id. at 164–65.[5] In the Narrative Summary, Dr. Washington identified the C&P exam conducted by FNP McMahon as the "relevant physical examination." Id. at 165. Dr. Washington's Narrative Summary, however, made no reference to the diagnosis of radiculopathy of the left lower extremity that FNP McMahon had coupled with her diagnosis of degenerative disc disease. Id. at 164–65. Instead, Dr. Washington identified only "Degenerative Disc Disease, Lumbar Spine" as a "Medical Condition[] to be Considered as the Basis of Fitness for Duty Determination." Id. at 164. In addition, Dr. Washington's Narrative Summary identified "Degenerative Disc Disease, Lumbar Spine," under the sections entitled "Conditions Not Meeting Medical Retention Standards" and "Diagnoses MEB Found Not Meeting Medical Retention Standards." Id. at 164–65.

Under "Additional Diagnoses MEB Found Met Medical Retention Standards," Dr. Washington listed and discussed gastroesophageal reflux disease, TMJ disease of the left jaw, and mild high frequency sensorineural hearing loss in the left ear. Id. at 165. Again, no mention was made of the radiculopathy of the lower left extremity that had been diagnosed by FNP McMahon. Id.

Under the section of the Narrative Summary entitled "Application of AR 40-501, Chapter 3," Dr. Washington "[r]ecommend[ed] MEB for adjudication by PEB IAW AR 40-501 Chapter 3-39h." Id. The reference to "Chapter 3" is a reference to the third chapter of the Army's Standards of Medical Fitness, which identifies "the various medical conditions and physical defects which may render a Soldier unfit for further military service." Def.'s Mot. App. at A-148; see also id. at A-149–67 (listing conditions). Part 3-39h of those standards identifies as an unfitting condition or physical defect "[n]onradicular pain involving the cervical, thoracic, lumbosacral, or coccygeal spine, whether idiopathic or secondary to degenerative disc or joint disease, that fails to respond to adequate conservative treatment and necessitates significant limitation of physical activity." Id. at A-162.

The Narrative Summary also noted under the section entitled "prognosis" that Mr. McCord was "not likely to improve while subjected to the stresses of military duty" and that it was "unlikely that he/she w[ould] be able to resume active duty military training or service without recurrence or progression of his/her symptoms within the next 5 years." AR Tab 19 at 165. Dr. Washington recorded that Mr. McCord's "condition significantly limits and interferes with his/her performance of duties due to recurrence of symptoms with overexertion or repetitive motion." Id.

---

[5] The "narrative summary . . . to the MEB" is the "heart of the [Army's] disability evaluation system." See Def.'s Mot. App. at A-288 (Army Reg. 635-40, Part 4-11). It "describ[es] a Soldier's conditions," including "[t]he history of the Soldier's illness, objective findings on examination, results of X-ray and laboratory tests, reports of consultations, response to therapy, and subjective conclusions with rationale." Id. If, after receiving the narrative summary, the MEB "determines the Soldier does not meet retention standards, the board will recommend referral" to a PEB. Id. (Part 4-10).

Appended to the Narrative Summary was a "Medical Evaluation Board Narrative Summary/Addendum." Id. at 166–69. The Addendum, which is signed by PA Parks and by Dr. Washington, bears the date October 24, 2011 in the lower left hand corner of each page. Id. It is unclear whether the information contained in the addendum is based on a new examination of Mr. McCord or merely summarizes the results of PA Parks' earlier examinations in the summer of 2011, described above.

In any event, the addendum reflects "chronic lower back pain secondary to degenerative disc disease" as the "Reason for [the] MEB." Id. at 166. It also contains a somewhat bewildering statement under "history of present illness" that Mr. McCord "denie[d] any history of trauma to his back or lower extremities nor [could] he relate onset of symptoms to any specific activity or event." Id. In addition, notwithstanding the symptoms recorded by PA Parks in December 2010 and the fact that FNP McMahon recorded symptoms of numbness, paresthesias, and "leg or foot weakness" upon examining Mr. McCord some eleven days earlier, the addendum stated that Mr. McCord denied lower extremity numbness or tingling. Id.

The narrative summary addendum also listed the results of a physical examination. See id. It is unclear from the record, as described above, whether this examination was a new examination conducted separately from the C&P exam, or whether the summary merely purported to interpret the results of the C&P exam or of Mr. McCord's earlier examinations. According to the addendum, the examination reflected "guarded, active range of motion of the back and active full range of motion of the lower extremities." Id. at 167. It also indicated tenderness along the lumbosacral paraspinous region but no erythema, edema, ecchymosis, palpable deformities, or spasm. Id. Further, it showed that Mr. McCord was "intact to light touch in all lower extremity dermatomes bilaterally" and that "[m]anual motor testing reveal[ed] 5/5 motor strength in all lower extremity muscle groups bilaterally." Id. The addendum also stated that Mr. McCord had "a negative straight leg raise" test. Id. Further neurological testing was also negative. Id.

The addendum also incorporated an interpretation of x-rays taken ten months earlier (in December 2010) and the MRI taken a year earlier (in October 2010). Id. at 167–68. According to the addendum, those tests led to an impression of "[c]hronic lower back pain secondary to lumbar degenerative disc disease without radiculopathy." Id. at 169. The addendum recommended that Mr. McCord be "[r]efer[red] to the MEB/PEB for adjudication under the provisions of AR 40-501, chapter [3-39h]." Id.

On October 27, 2011, the MEB referred Mr. McCord to a PEB using DA Form 3947, entitled "Medical Evaluation Board Proceedings." Id. at 162. The form provided a column in which the MEB was to "list all diagnos[e]s" based on consideration of clinical records, laboratory findings, and physical examinations. Id. The diagnoses listed in this column included degenerative disc disease, lumbar spine (with no mention of radiculopathy); gastroenteritis; TMJ disease; hearing loss; tinnitus; and vertigo. Id. According to the MEB, the only medical condition that failed Army retention standards was degenerative disc disease, lumbar spine. Id. (noting that as a result of this diagnosis, Mr. McCord "[f]ail[ed] Army [r]etention [s]tandards AR 40-501, Chapter 3-39h").

Colonel Martin Doperak approved the findings and recommendation of the MEB on October 30, 2011, by signing the second page of the DA Form 3947. Id. at 163. On November 10, 2011, Mr. McCord initialed and signed below Colonel Doperak's signature, "agree[ing] with the board's findings and recommendation." Id. In doing so, Mr. McCord also agreed to a number of statements, including that the PEB would "consider and review only those conditions listed on the DA Form 3947"; that the "DA Form 3947 include[d] all [Mr. McCord's] current medical conditions and whether or not they [met] medical retention standards"; that "[a]ll documentation of military medical care in [his] possession ha[d] been provided to the Physical Evaluation Board Liaison Officer for inclusion in this MEB"; and that he "agree[d] that this MEB accurately cover[ed] all [his] current medical conditions." Id.

## IV.    Physical Evaluation Board Proceedings

Pursuant to Army Regulations, after an MEB referral, a PEB is "established to evaluate . . . physical disability equitably for the Soldier and the Army." Def.'s Mot. App. at A-291 (Army Reg. 635-40, Part 4-17(a)). PEBs are three-member panels made up of "experienced officers who have been trained on adjudication standards and procedures." Id. Their function is to "[i]nvestigat[e] the nature, cause, degree of severity, and probable permanency of the disability of Soldiers whose cases are referred to the board"; "[e]valuat[e] the physical condition of the Soldier against the physical requirements of the Soldier's particular office, grade, rank, or rating"; "[p]rovid[e] a full and fair hearing for the Soldier as required by" 10 U.S.C. § 1214; and "[m]ak[e] findings and recommendations required by law to establish the eligibility of a Soldier to be separated or retired because of physical disability." Id.

The PEB determines, among other things, whether "the Soldier is physically fit or unfit to perform the duties of the Soldier's office, grade, rank, or rating"; whether the disability is permanent; and whether the disability "meets the criteria established by law for compensation." Id. at A-293 (Army Reg. 635-40, Part 4-19(a)). According to Army Regulations, if the PEB determines that the soldier is unfit because of physical disability and is entitled to benefits, it "must decide the percentage rating for each unfitting compensable disability using the [Veterans Affairs Schedule for Rating Disabilities (VASRD)]." Id. at A-295 (Army Reg. 635-40, Part 4-19(i)).

In the DES Joint Pilot program, however, the procedures set forth in the Army Regulations were modified somewhat by requiring the PEB to base its determination of whether a soldier was unfit upon the C&P exam performed as part of the Pilot. Def.'s Consent Mot. to Stay Further Proceedings (Def.'s Consent Mot.) Attach. 2 at 3, 5–6, ECF No. 25-2 (Policy and Procedural Directive-Type Memorandum (DTM) for DES Pilot Program Sections 2.1 and 5.3.1– 5.4.1); see also Pl.'s Suppl. Mem. Attach. 1 at 3, 8 (DES Pilot Operations Manual Sections 2.1 and 5.3.1–5.4.1). Moreover, for soldiers in the Pilot, the PEB was "not [to] assign disability ratings to conditions, other than adopting the DVA's rating(s) for unfitting conditions." Def.'s Consent Mot. Attach. 2 at 21–22 (Section 6.11); see also id. at 5 (Section 4.2) (stating that the military secretaries "will use the DVA disability ratings awarded . . . for all military unfitting conditions").

According to Army Regulations, if a soldier concurs with the PEB's findings, the proceedings are then approved for the Secretary of the Army. Def.'s Mot. App. at A-298 (Army

Reg. 635-40, Part 4-20(e)). When a PEB finds a soldier unfit and determines he or she is entitled to benefits, the Secretary of the Army is authorized to retire the soldier. See 10 U.S.C. § 1201. If the soldier has served at least twenty years or has a disability rating of at least thirty percent, he or she is entitled to be retired with medical retirement pay. See id.

With respect to Mr. McCord's case, on November 14, 2011, Mr. McCord's PEBLO prepared a "PEB Referral Transmittal Document" and submitted it to the DC-based PEB. AR Tab 19 at 155. On November 23, 2011, Colonel Carl M. Johnson, president of the Army's DC PEB, wrote to the DVA "DES Rating Activity" in Baltimore, stating that the PEB had found Mr. McCord "physically unfit to continue military service for the following PEB[-]referred unfitting conditions . . . [d]egenerative disc disease, lumbar spine." Id. Tab 18 at 154. He requested that DVA "provide a disability rating percentage (with rationale) to the DC PEB Administration for all referred and claimed conditions" set forth on DA Form 3947. Id.

On December 13, 2011, DVA issued a "Disability Evaluation System Proposed Rating" (DES Proposed Rating Decision). Id. Tab 17 at 145. Noting that Mr. McCord had "been referred to the Physical Evaluation Board (PEB) as unfit for continued military service," DVA stated in the report that "[t]his disability determination is being prepared to assign evaluations to the service member's unfit conditions for use by DoD in determining a final disposition for unfit conditions as well as to determine the member's potential entitlement to DVA disability compensation." Id.

As pertinent to the issues before the Court, DVA stated that "for Disability Evaluation Purposes, a 20 percent evaluation is proposed for DDD of the lumbar spine with radiculopathy of the left lower extremity." Id. at 146. "For purposes of entitlement to Department of Veterans Affairs (VA) benefits," DVA's report stated, "it is proposed to establish service connection for DDD of the lumbar spine with radiculopathy of the left lower extremity (PEB referred as degenerative disc disease, lumbar spine) (claimed as lumbar degenerative disc disease) as directly related to military service with a 20 percent evaluation." Id. at 146–47. DVA assigned code 5242 (for degenerative arthritis of the spine) to this condition. Id. at 152. DVA stated that it "assigned a 20 percent disability rating . . . based on . . . [f]orward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees." Id. at 147. It also concluded that the "provisions of 38 CFR §§4.40 and 4.45 concerning functional loss due to pain, fatigue, weakness, or lack of endurance, incoordination, and flare-ups . . . have been considered and are not warranted." Id.

The PEB convened on February 17, 2012, and issued DA Form 199, documenting its proceedings and conclusions. Id. Tab 13 at 124–25. Under "disability description," it listed "degenerative disc disease of the lumbar spine with radiculopathy of the left lower extremity (PEB referred as degenerative disc disease, lumbar spine) (claimed as lumbar degenerative disc disease)." Id. at 124. It noted that the disability corresponded to DVA code 5242. Id. The PEB further described Mr. McCord's condition as beginning in "April 2009 unique to rigors of Soldiering during basic training." Id. It concluded that his "inability to jump[,] land[,] or run prevents him from reasonably performing the task[s] associated with the common military skills of wearing body armor for at least 12 hours per day and moving 40lbs while wearing usual protective gear." Id. Consistent with DVA's proposed rating, the PEB assigned the "[r]ecommended disability percentage" of twenty percent. Id.

The PEB informed Mr. McCord that "[s]oldiers with a disability rating of less than 30 percent, and with less than 20 years of service . . . require[] separation from service with disability severance pay." Id. The PEB then reiterated that Mr. McCord was "physically unfit and recommend[ed] a combined rating" of twenty percent and that he be "[s]eparat[ed] with severance pay if otherwise qualified." Id. at 125.

On February 27, 2012, Mr. McCord signed the PEB's findings on the "Integrated DES Election Page." Id. at 126–27. He marked the box indicating that he "concur[red] with PEB findings" and "waive[d his] right to a formal hearing." Id. at 126. He did not request reconsideration of his DVA ratings. Id. His PEBLO, Ms. High, also signed the form that day, indicating that she had "informed the Soldier of the findings and recommendations of the Physical Evaluation Board and explained to him/her the result of the findings and recommendations and his/her legal rights pertaining thereto." Id. at 127. The PEB's conclusions were "Approved for the Secretary of the Army" on February 28, 2012. Id. at 124–25.

## V.    DVA Benefits Estimate

In the meantime, after Mr. McCord's case was referred to the PEB, but before it was adjudicated, DVA provided Mr. McCord with a "Benefits Estimate" on February 2, 2012. Id. Tab 15 at 131–38. In the benefits estimate, under the rubric of "unfitting disabilities," DVA listed "DDD of the lumbar spine with radiculopathy of the left lower extremity (PEB referred as degenerative disc disease, lumbar spine) (claimed as lumbar degenerative disc disease)." Id. at 131. It assigned a twenty percent rating to this "unfitting" disability. Id. It also provided a rating of ten percent each for tinnitus and gastroesophageal reflux disease, which were identified as claimed disabilities that were service-connected. Id. at 132. DVA did not separately assign a rating to Mr. McCord's radiculopathy. Id. at 131–38.

## VI.    Mr. McCord's Discharge

Thereafter, on March 14, 2012, the Acting Adjutant General for Fort Lee, Virginia, issued Mr. McCord an order discharging him from the Army. Id. Tab 11 at 118–19. The order had an effective date of May 28, 2012. Id. at 118. It assigned Mr. McCord a twenty percent disability rating and stated that he would be receiving "authorized disability severance pay . . . in accordance with Section 1646 of the National Defense Authorization Act of 2008." Id. It also noted that his "[d]isability was incurred in a combat zone or incurred during the performance of duty in combat-related operations as designated by the Secretary of Defense." Id. On March 26, 2012, the Army issued Mr. McCord a "Certificate of Release or Discharge from Active Duty," indicating he was receiving an honorable discharge. Id. Tab 10 at 117.

## VII.    Claim for Increase in Rating of Spinal Condition

A few weeks before Mr. McCord's discharge, on May 8, 2012, he submitted a "Statement in Support of Claim" to DVA requesting that it increase the rating of his disability for purposes of his DVA benefits. See id. Tab 8 at 108; see also id. at 70 (DVA noting that Mr. McCord filed a "new claim for increase for his back condition on 5/29/12"). He stated that he was "taking a lot of medication to get some relief and it [was] not helping." Id. at 108. Mr. McCord also wrote that his back pain limited him to four hours of sleep per night. Id. Additionally, Mr. McCord stated

that it was hard for him to play with his three-year-old child and that two-to-three times per month he could not get out of bed. Id.

On July 17, 2012, DVA issued a "deferred rating decision" with respect to Mr. McCord's request for an increase. See id. at 99. The DVA rating specialist reviewing Mr. McCord's request indicated on the "deferred rating decision" form that Mr. McCord's request for an increase "for his lumbar spine condition[] need[ed] development." Id.

## VIII.   Final DVA Compensation Decision and Rating

On September 14, 2012, DVA issued a final "Rating Decision" (Final Rating Decision). It based its Final Rating Decision on the original claim Mr. McCord filed in September 2011. Id. Tab 9 at 111–16. The evidence DVA considered in issuing the Final Rating Decision included, among other things, Mr. McCord's treatment records from December 29, 2008 to November 23, 2011, as well as military medical evaluations and board reports from October and November 2011. Id. at 111.

The Final Rating Decision differed from the DES Proposed Rating Decision. First, DVA "assigned a 20 percent disability rating" for "degenerative disc disease, lumbar spine," without mentioning the associated radiculopathy. Id. at 112. It based this rating on Mr. McCord's "forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees" and identified this condition as corresponding to DVA code 5242. Id. at 112, 115. Additionally, in contrast to the DES Proposed Rating Decision, DVA stated that the "provisions of 38 CFR §§4.40 and 4.45 concerning functional loss due to pain, fatigue, weakness, or lack of endurance, incoordination, and flare-ups . . . have been considered and applied." Id. at 112. Then, unlike in its DES Proposed Rating Decision, DVA separately listed and rated Mr. McCord's "radiculopathy, left lower extremity." Id. at 112–13. In particular, DVA "assigned a 10 percent evaluation for radiculopathy, left lower extremity, based on mild incomplete paralysis." Id. at 113. It listed corresponding DVA code 8520. Id. at 115.

On a summary sheet included with the Final Rating Decision, DVA noted that Mr. McCord's original disability claim had been received September 28, 2011, and that he had an associated DES claim for which it listed a date of May 29, 2012. Id. at 115. It also listed, under a section entitled "Subject to Compensation," both degenerative disc disease of the lumbar spine, with a rating of twenty percent "from 5/29/2012," and radiculopathy of the left lower extremity, with a rating of ten percent "from 5/29/2012." Id. The DVA summary sheet identified the degenerative disc disease as the "disability severance condition." Id. It identified radiculopathy as "Disability Evaluation System (DES)/Found DES Exam."[6] Id. It also concluded that the radiculopathy, like the degenerative disc disease, was service-connected. Id. at 115–16.

---

[6] DVA uses this label to identify all conditions found during the single, comprehensive examination, to contrast them with those referred to it or claimed by the soldier. Def.'s Suppl. Br. App. at A35, ECF No. 29-1 (DVA's IDES Implementation Guide).

**IX.     DVA Benefits Decision Letter and Subsequent DVA Correspondence**

On September 19, 2012, DVA mailed a benefits decision letter to Mr. McCord, notifying him of the Final Rating Decision on his "VA/DOD joint disability evaluation claim for service connected compensation received on September 28, 2011." Id. at 91. According to the DOD DTM for the Integrated Disability Evaluation System, this letter marked the last step in the DOD/DVA joint evaluation process. See Def.'s Consent Mot. Attach. 1 at 10, ECF No. 25-1 (DOD DTM 11-015 noting that the scope of the joint program "includes . . . all . . . activities . . . to the point of . . . completion of VA's benefits decision letter"). The letter also clarified that Mr. McCord's "claim for increase for [his] lumbar spine condition, VA Form 21-4138 'Statement in Support of Claim[,]'[] was received on May 17, 2012 and [would] be addressed in a separate letter by the Wichita Regional Office." Id. at 93 (emphasis omitted).

On November 19, 2012, DVA's Wichita Regional Office sent Mr. McCord a letter in which it stated it was "working on [his] claim for: degenerative disc disease lumbar spine (increase)." Id. Tab 8 at 84. It stated that DVA still "need[ed] additional evidence from [Mr. McCord]." Id. Specifically, it requested evidence showing that the condition had "increased in severity." Id. Mr. McCord responded that he wished for his "reopened claim for increase" to be converted into an appeal of the DES Proposed Rating Decision. See id. at 74. The Wichita Regional Office informed Mr. McCord, however, that he could not appeal the December 13, 2011 DVA decision because it was a "Proposed Rating" and not a "final action." Id. at 71.

**X.     Mr. McCord's Appeal to the Army Board for Correction of Military Records**

On June 10, 2013, through counsel, Mr. McCord filed an "Application for Correction of Military Record" along with an explanatory memorandum with the ABCMR. Id. Tab 5 at 13. In the memorandum, he argued that the PEB committed error when it failed to provide a separate rating of 10% for radiculopathy of the left lower extremity as DVA had done when it issued the Final Rating Decision in September of 2012. Id. at 18. Accordingly, Mr. McCord requested "medical disability retirement due to [the] back condition [he] incurred in [the] service." Id. at 13.

Thereafter, the ABCMR obtained a medical advisory opinion from a physician assistant in the Army. See id. Tab 4 at 11–12; see also id. Tab 3 at 3 (ABCMR noting it considered advisory opinions). In the opinion, the PA defined radiculopathy as "the radiation of pain originating at or near a nerve root in the spine to another location that is innervated by that nerve," and noted that radiculopathy is "normally caused by compression/irritation to the nerve root" and "can present in the form of pain, numbness, tingling, or other symptoms." Id. Tab 4 at 11. The PA observed that the PEB had assigned Mr. McCord's disability a diagnostic code of 5242, for "degenerative disc disease, lumbar spine," and included radiculopathy "in the disability description." Id. According to the PA, the assignment of the diagnostic code of 5242 was appropriate because "[t]here was no evidence of muscle weakness, atrophy, paresthesia or other neurological abnormalities identified by diagnostic testing or physical exam." Id.

The PA further noted that the Final Rating Decision included an additional diagnostic code, 8520, for "[s]ciatic nerve, paralysis" to which it assigned a disability rating of ten percent.

Id. According to the PA, the assignment of the new diagnostic code was "indicative of the worsening or natural progression of disease as paralysis means the loss of muscle function." Id.

Following receipt of the advisory opinion, on November 12, 2014, the ABCMR met to consider whether Mr. McCord's "records [should] be corrected to show he was retired due to medical disabilities instead of discharged with severance pay." Id. Tab 3 at 3. It noted that Mr. McCord, through counsel, had alleged that the PEB erred when it "failed to rate the applicant's radiculopathy, left, lower leg, separately" as DVA had done in the Final Rating Decision, in which DVA had relied on "the same evidence as the PEB." Id. Mr. McCord alleged that he "clearly [met] the 30% disability rating needed for a disability retirement," and that, in fact, "a 40% rating [was] warranted for [his] back condition and a separate 40% rating for radiculopathy," which would justify a total 60% rating for all of his unfitting conditions. Id. at 5.

The ABCMR denied Mr. McCord's application. Id. at 9–10. It observed that the "PEB diagnosed [Mr. McCord] with DDD of the lumbar spine with radiculopathy," and "found him medically unfit." Id. at 9. It reasoned, however, that "[r]adiculopathy of the left lower extremity, by itself, was not found to be an unfitting medical condition at the time of [Mr. McCord's] separation." Id.

Further, in explaining why DVA's Final Rating Decision assigned a separate diagnostic code and rating for radiculopathy, the ABCMR reasoned that the rating given was "indicative of the worsening or natural progression of the disease." Id. "Therefore," it continued, "the rating is reflective of new evidence of changes to [Mr. McCord's] condition after his discharge" (without pointing to any such evidence). Id. As a result, the ABCMR stated that Mr. McCord's "separation action with severance pay was accomplished in compliance with laws and regulations"; that there was "no evidence of error or injustice"; and that there was "no basis to grant the requested relief." Id.

## DISCUSSION

### I.    Subject Matter Jurisdiction

Pursuant to the Tucker Act, the United States Court of Federal Claims has jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a) (2012). The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). A plaintiff, therefore, must establish that "a separate source of substantive law . . . creates the right to money damages." Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

Here, Mr. McCord seeks past and continuing military medical retirement benefits pursuant to the Military Pay Act, 10 U.S.C. § 1201. Compl. ¶¶ 18, 20. That Act is a money-mandating statute sufficient to vest jurisdiction in the Court of Federal Claims under the Tucker Act. See Chambers v. United States, 417 F.3d 1218, 1223–24 (Fed. Cir. 2005); see also

Hatmaker v. United States, 117 Fed. Cl. 560, 565 (2014) ("10 U.S.C. § 1201 requires the payment of disability retirement compensation once a service member's disability is found qualifying . . . . [and] is a money-mandating statute." (citing Fisher, 402 F.3d at 1174)). Because Mr. McCord seeks money damages pursuant to a money-mandating source of substantive law, this Court has jurisdiction.

## II. Merits

### A. Standard of Review

The Court of Federal Claims reviews decisions of military correction boards based upon the administrative record. Walls v. United States, 582 F.3d 1358, 1367 (Fed. Cir. 2009). Parties may move for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the Court of Federal Claims (RCFC). In deciding a motion pursuant to RCFC 52.1, the court makes "factual findings . . . from the record evidence as if it were conducting a trial on the record." Bannum, Inc. v. United States, 404 F.3d 1346, 1357 (Fed. Cir. 2005). Thus, "resolution of a motion respecting the administrative record is akin to an expedited trial on the paper record, and the Court must make fact findings where necessary." Baird v. United States, 77 Fed. Cl. 114, 116 (2007). The Court's inquiry is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." A&D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006). Unlike a summary judgment proceeding, genuine issues of material fact will not foreclose judgment on the administrative record. Bannum, Inc., 404 F.3d at 1356.

The Court reviews the administrative record to determine whether a board's decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. See Chappell v. Wallace, 462 U.S. 296, 303 (1983) (noting that a decision of the Board for the Correction of Naval Records is "subject to judicial review" and may be set aside if it is "arbitrary, capricious or not based on substantial evidence"); Barnick v. United States, 591 F.3d 1372, 1377 (Fed. Cir. 2010); see also Walls, 582 F.3d at 1367 (stating that it is "well established that judicial review of decisions of military correction boards is conducted under the APA").

The scope of this judicial review is a deferential one, as "determining who is fit or unfit to serve in the armed services is not a judicial province." See Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983). The arbitrary and capricious standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." Id. at 1157 (emphasis in original). In determining whether the conclusion is supported by substantial evidence, "all of the competent evidence must be considered . . . and whether or not it supports the challenged conclusion." Id. (emphasis omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). This Court may not "substitute [its] judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." Heisig, 719 F.2d at 1156.

B.    **The ABCMR's Decision is Not Supported by Substantial Evidence**

The ABCMR's denial of Mr. McCord's application to correct his records to reflect a combined thirty percent disability rating was based on two interrelated determinations. First, the ABCMR concluded that a twenty percent (rather than thirty percent) rating was appropriate because "[r]adiculopathy of the left lower extremity, by itself, was not found to be an unfitting medical condition at the time of the applicant's separation." AR Tab 3 at 9. Second, the ABCMR believed that DVA's Final Rating Decision, which provided a separate rating of ten percent for Mr. McCord's radiculopathy of the lower left extremity, was "indicative of the worsening or natural progression of the disease" since the time of his discharge. Id. It therefore rejected Mr. McCord's argument that the disability that the PEB identified as the unfitting condition— "degenerative disc disease of the lumbar spine with radiculopathy of the left lower extremity"— should likewise have reflected an additional ten percent rating for the radiculopathy. Id.

Both of the Board's interrelated determinations were incorrect. First, it is irrelevant to the issues raised by Mr. McCord that the PEB did not identify radiculopathy of the left lower extremity, by itself, as an unfitting medical condition. Pursuant to Army Regulations, in making the determination of fitness or unfitness, the PEB is to consider the "overall effect of all disabilities." Def.'s Mot. App. at A-282 (Army Reg. 635-40, Part 3-1(b)). "A soldier may be unfit because of physical disability caused by a single impairment or physical disabilities resulting from the overall effect of two or more impairments even though each of them, alone, would not cause unfitness." Id.

Here, the PEB issued a DA Form 199 for Mr. McCord on February 17, 2012, in which it identified "[d]egenerative disc disease of the lumbar spine with radiculopathy of the left lower extremity" as the condition that "render[ed] him unfit for duty." AR Tab 13 at 124 (emphasis added). In a subsequent paragraph, the PEB then listed gastroenteritis, TMJ disease of the left jaw, mild high frequency sensorineural hearing loss of the left ear, bilateral tinnitus, and vertigo. Id. It concluded that those conditions, by contrast, "d[id] not render [Mr. McCord] unable to reasonably perform the duties of his rank/grade and . . . therefore render him fit for duty." Id. In other words, the PEB determined that degenerative disc disease with radiculopathy of the left lower extremity was the overall unfitting condition. Indeed, the ABCMR recognized this fact, explicitly observing that the "PEB diagnosed [Mr. McCord] with DDD of the lumbar spine with radiculopathy of the left lower extremity . . . [and] found him medically unfit." Id. Tab 3 at 9. Thus, its observation that Mr. McCord's radiculopathy was not found "separately unfitting" is beside the point.

Moreover, Army Regulations provide that "the unfitting conditions or defects and those which contribute to unfitness will be considered in arriving at the rated degree of incapacity warranting retirement or separation for disability." Def.'s Mot. App. at A-285 (Army Reg. 635-40, Part 3-5(d)) (emphasis supplied). Whether the radiculopathy was separately unfitting is therefore irrelevant to what rating should have been assigned, because the PEB concluded that "[d]egenerative disc disease of the lumbar spine with radiculopathy of the left lower extremity . . . render[ed] [Mr. McCord] unfit." AR Tab 13 at 124.

Second, notwithstanding the foregoing, it is undisputed that the PEB failed to take Mr. McCord's radiculopathy into consideration when it assigned a rating of twenty percent for his

unfitting condition. The PEB assigned Mr. McCord's unfitting condition a diagnostic code of 5242. AR Tab 13 at 124. That code corresponds to "[d]egenerative arthritis of the spine." See 38 C.F.R. § 4.71a. The ratings prescribed for this code are based solely on the range of motion of the spine, and do not account for "pain (whether or not it radiates), stiffness, or aching." Id. According to the schedule, a twenty percent disability rating under this diagnostic code corresponds to "[f]orward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees . . . or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees." Id.

With respect to radiculopathy, the rating table states that "any associated objective neurologic abnormalities, including but not limited to, bowel or bladder impairment, [are to be evaluated] separately, under an appropriate diagnostic code." Id. (emphasis added). But the PEB did not do so. Accordingly, despite the fact that the PEB labelled Mr. McCord's condition as "DDD of the lumbar spine with radiculopathy of the left lower extremity," the twenty percent rating it assigned Mr. McCord for code 5242 failed to account for his radiculopathy.

Indeed, the DES Proposed Rating Decision (upon which the PEB apparently relied) similarly failed to take Mr. McCord's radiculopathy into consideration. But DVA's Final Rating Decision separately rated, and thus considered, Mr. McCord's radiculopathy. Thus, as noted, the Final Rating Decision assigned a twenty percent rating to degenerative disc disease and a ten percent rating to Mr. McCord's radiculopathy of the left lower extremity. Id. Tab 9 at 112–13. Under DVA and Army regulations, these two ratings together result in a combined disability rating of thirty percent for Mr. McCord's degenerative disc disease with radiculopathy of the left lower extremity. Def.'s Mot. App. at A-334 (Army Reg. 635-40 App. B, Part B-12); 38 C.F.R. § 4.25.

Unlike DVA, the PEB never corrected its rating of Mr. McCord's unfitting condition. Thus, the ABCMR erred here by failing to direct the Army to similarly assign Mr. McCord a disability rating that took the radicular aspect of his unfitting condition into consideration to reflect DVA's final rating. [7]

Finally, the ABCMR's conclusions that the September 2012 Final Rating Decision reflected a "worsening or natural progression of the disease" and was "reflective of new evidence of changes to the applicant's condition after his discharge," AR Tab 3 at 9, are unsupported by the administrative record. As counsel for the government conceded at oral argument in this case, DVA based the Final Rating Decision upon the exact same medical records on which it based the DES Proposed Rating Decision. See Oral Argument at 2:31:33, McCord v. United States, No.

---

[7] The Court notes that DVA apparently did not follow appropriate procedures when it issued a final rating that was different from its proposed rating because it failed to advise Mr. McCord of the effect of this change on his entitlement to benefits under the military disability system. The guidance applicable to the Joint Evaluation Pilot required DVA to inform Mr. McCord of the change in its original rating and to enclose a form that Mr. McCord could use to seek correction of his records before the appropriate board. See Def.'s Suppl. Br. App. at A57–59.

16-310C, and compare id. Tab 9 at 111, with id. Tab 17 at 146.[8] And those records covered a time period ending November 23, 2011, approximately three weeks prior to DVA's Proposed Rating and approximately four months prior to Mr. McCord's discharge. See id. Tab 9 at 111.

Indeed, no medical evidence is cited by the ABCMR or exists in the record to support the conclusion that there was any worsening of Mr. McCord's degenerative disc disease following his discharge from the Army. See id. Tab 3 at 3–9. Rather, the record clearly indicates that Mr. McCord had radiculopathy symptoms at least as far back as July 17, 2010, almost two years prior to his discharge. See id. Tab 23 at 424. And, of course, he was diagnosed with degenerative disc disease with radiculopathy on October 18, 2011, by FNP McMahon, who conducted the C&P exam that was supposed to serve as the basis for Mr. McCord's entitlement to both military and DVA benefits.[9] See AR Tab 19 at 203. Further, in the Final Rating Decision, DVA specifically stated that the ratings assigned were retroactively effective as of May 29, 2012, the day after Mr. McCord was discharged from the Army. See id. Tab 9 at 115–16.

In short, because DVA did not review any new records evidencing a worsening of Mr. McCord's lumbar degenerative disc disease after separation, the changes it made in the Final Rating Decision cannot be the result of changes to Mr. McCord's condition after discharge. Instead, the Final Rating Decision set forth DVA's final rating of Mr. McCord's unfitting conditions. Further, because DVA issued the Final Rating Decision before it issued the September 19, 2012 benefits decision letter (which, as noted, marked the end of the Joint Pilot Program process), the ratings of twenty percent for degenerative disc disease and ten percent for radiculopathy represented DVA's final views regarding the appropriate ratings to assign for both military disability and DVA compensation purposes.

*      *      *      *      *      *      *      *      *      *      *

To summarize: Army Regulations establish that Mr. McCord's radiculopathy should have been considered in determining his disability rating for purposes of the military's disability evaluation system, but the PEB failed to do so. Further, it was error for the ABCMR not to correct Mr. McCord's records to reflect DVA's Final Rating Decision (which assigned a twenty percent rating for degenerative disc disease and a separate ten percent rating for radiculopathy). Its basis for declining to do so—that the Final Rating Decision was based on a post-discharge

---

[8] The only additional document DVA reviewed in preparing the 2012 Final Rating Decision was the "DD214, verification of service, received June 27, 2012." AR Tab 9 at 111.

[9] Nor was DVA's Final Rating Decision a response to Mr. McCord's request for an increase in his disability rating as set forth in the 2011 DES Proposed Rating Decision, as the government at one point argued. See Def.'s Resp. to Pl.'s Cross-Mot. at 3–4, ECF No. 21. Although Mr. McCord sought an increase in May 2012, AR Tab 8 at 108, DVA deferred its decision on that request in July 2012, id. at 99. Moreover, DVA expressly addressed the request for an increase in its September 2012 Final Rating Decision by stating that Mr. McCord's claim for an increase would be addressed later by DVA's regional office. Id. at 93. The regional office then contacted Mr. McCord to ask for additional documentation to process his request for increase in November 2012, two months after the 2012 Final Rating Decision. Id. at 84.

worsening of Mr. McCord's condition—is not supported by the record. Accordingly, the ABCMR's decision regarding Mr. McCord's request for a correction of his records was arbitrary, capricious, and contrary to law.

## CONCLUSION

For the reasons stated above, the government's motion for judgment on the administrative record is **DENIED**. Mr. McCord's cross-motion for judgment on the administrative record is **GRANTED**.

The matter is **REMANDED** to the ABCMR for correction of Mr. McCord's military records to reflect the assignment of a combined disability rating of thirty percent for the unfitting condition of degenerative disc disease of the lumbar spine with radiculopathy of the left lower extremity, and, accordingly, to reflect that Mr. McCord was retired with medical retirement pay, rather than discharged with severance pay. The ABCMR is also directed to take all necessary action, including issuing any necessary orders, to ensure that Mr. McCord receives back pay and any ongoing disability retirement pay to which he is entitled as a result of the corrections. Finally, the ABCMR shall make any other corrections and take any other actions that are required to carry out the Court's instructions.

The remand proceedings shall be completed within **sixty days** of the date of this Order. The Court **STAYS** proceedings in the instant case during that time. If the ABCMR has not corrected Mr. McCord's records and provided the relief to which he is entitled within sixty days of the date of this Order, the parties shall follow the procedures set forth in RCFC 52.2(d).

When the ABCMR has corrected Mr. McCord's military records and awarded him the back pay and other benefits to which he is entitled due to those corrections, it shall forward two copies of its documentation that those tasks have been completed to the Clerk of the Court of Federal Claims pursuant to RCFC 52.2(e). The parties shall then file, within thirty days of the filing of the ABCMR's documentation, the notices required by RCFC 52.2(f)(1).

In accordance with RCFC 52.2(b)(1)(D), within forty-five days of the date of this Order, the government shall file a status report indicating the status of the proceedings before the ABCMR.

The Clerk is directed to serve this order upon the Army Board for Correction of Military Records, 251 18th Street South, Suite 385, Arlington, Virginia, 22202.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge