# In the United States Court of Federal Claims

No. 16-310C

(Filed: July 10, 2018)

|  |  |
|---|---|
| PRESTON A. MCCORD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) <br> ) | Keywords: Military Records Correction; Remand; RCFC 52.2(f)(1); Army Board for Correction of Military Records; Back Pay; 38 U.S.C. § 5304; Concurrent Receipt Prohibition; Health Insurance Premiums; Out-of-Pocket Costs; TRICARE. |

*Jason W. Manne*, Pitt Law Veterans Practicum, Pittsburgh, PA, for Plaintiff.

*Mikki Cottet*, Senior Trial Counsel, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, Washington, D.C., with whom were *Deborah A. Bynum*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General, for Defendant.

**OPINION AND ORDER**

**KAPLAN, Judge.**

**BACKGROUND**

**I.   Prior Proceedings Before the Court**

This military pay case is currently before the Court on Plaintiff Preston McCord's request for further proceedings. As described in greater detail in an Opinion and Order issued on April 19, 2017, Mr. McCord injured his lower back during his service in the United States Army between 2008 and 2012. McCord v. United States, 131 Fed. Cl. 333, 335 (2017). The Army's Physical Evaluation Board found Mr. McCord unfit for duty and assigned him a disability rating of 20%. Id. at 342–43. Because his disability rating was less than 30% and because he had less than twenty years of service, the Army determined that Mr. McCord was not entitled to medical retirement pay or other benefits, such as TRICARE coverage. Instead, he was discharged from the Army in May 2012 with severance pay only. Id. Shortly thereafter, in June 2012, he began receiving monthly disability compensation payments from the Department of Veterans Affairs (VA). See id. at 343–44.

In June 2013, Mr. McCord filed an application with the Army Board for Correction of Military Records (ABCMR) requesting that his record be corrected to reflect an increased

disability rating of 30% and a medical retirement. Id. at 344. After the ABCMR denied his application, Mr. McCord filed suit here.

This Court ruled in favor of Mr. McCord and granted his motion for judgment on the administrative record. For the reasons set forth in detail in its Opinion and Order, the Court concluded that the ABCMR's refusal to correct Mr. McCord's records was arbitrary, capricious, and contrary to law. Id. at 349. It therefore remanded the case to the ABCMR:

> [F]or correction of Mr. McCord's military records to reflect the assignment of a combined disability rating of thirty percent for the unfitting condition of degenerative disc disease of the lumbar spine with radiculopathy of the left lower extremity, and, accordingly, to reflect that Mr. McCord was retired with medical retirement pay, rather than discharged with severance pay.

Id.

The Court also directed the ABCMR "to take all necessary action, including issuing any necessary orders, to ensure that Mr. McCord receives back pay and any ongoing disability retirement pay to which he is entitled as a result of the corrections." Id. "Finally," the Court directed, "the ABCMR shall make any other corrections and take any other actions that are required to carry out the Court's instructions." Id. The Court specified that "[w]hen the ABCMR has corrected Mr. McCord's military records and awarded him the back pay and other benefits to which he is entitled due to those corrections, it shall forward two copies of its documentation that those tasks have been completed to the Clerk of the Court of Federal Claims pursuant to RCFC 52.2(e)." Id.

## II. The ABCMR's Action on Remand

The ABCMR issued its decision on remand on June 22, 2017. ECF No. 43. The Board recommended that Mr. McCord's records be corrected to reflect an increased disability rating and medical retirement, and that the Defense Finance and Accounting Service (DFAS) process the benefits to which Mr. McCord became entitled as a result of the correction. Specifically, the ABCMR recommended that all records pertaining to Mr. McCord "be corrected by . . . showing that he was retired from the Army by reason of physical disability . . . with a combined service connected disability rating of 30 percent." Id. at 3. It also recommended that his military pay records be audited and that he be paid "all back pay and allowances he may be due as a result of this correction, less any monies previously paid that are now unauthorized due to this correction." Id.

The Secretary of the Army approved the Board's recommendation on June 23, 2017, and directed that Mr. McCord's records be corrected in accordance with that recommendation. Id. at 1. The Secretary further "request[ed that] necessary administrative action be taken to effect the correction of records . . . no later than 23 October 2017." Id. (emphasis in original).

2

### III. Plaintiff's Request for Further Proceedings

On August 11, 2017, the ABCMR filed its remand decision with the Court pursuant to RCFC 52.2(e). See id. Five days later, Mr. McCord filed notice pursuant to RCFC 52.2(f), asserting that the ABCMR's actions did not fully satisfy the Court's order. ECF No. 44. He argued that while the ABCMR had corrected Mr. McCord's records and requested appropriate payment, the Army had not yet calculated or awarded Mr. McCord any back pay. Id. at 4.

Several weeks later, on September 5, 2017, Mr. McCord filed an "amended statement pursuant to RCFC 52.2(f)," in which he withdrew his prior motion and advised the Court that he considered the ABCMR's actions "a satisfactory basis for disposition of this case." ECF No. 45. The government then filed its own notice pursuant to RCFC 52.2(f) on September 8, 2017. Def.'s Notice Pursuant to RCFC 52.2(f), ECF No. 46. In its notice, the government requested a sixty-day stay of the case "to permit [DFAS] to compute and process the medical retirement pay (including back pay, if any) and allowances that the ABCMR awarded to plaintiff." Id. at 1. It explained that "DFAS must compute the permanent retirement pay and allowances to which Mr. McCord is entitled . . . and, if necessary . . . recoup or . . . determine what percentage of Mr. McCord's retirement payments will be debited by way of an off-set of the amount that he received . . . as a lump-sum severance payment." Id. at 2. Once those calculations were complete, the government asserted, "the only action that will be required by the Court will be to enter a final judgment based upon that amount." Id. at 3. The Court granted the government's request and stayed the case for sixty days. Order, ECF No. 47. It extended that stay several times at the parties' request. ECF Nos. 49, 51, 53.

On March 21, 2018, Mr. McCord filed a motion to lift the stay and for further proceedings. Pl.'s Mot. to Lift Stay & Req. for Further Proceedings, ECF No. 54. Mr. McCord noted that he had received a letter from DFAS advising him that it had determined, based on his corrected records, that he was eligible to receive roughly $600 per month in military retirement pay. Id. at 2[1] & Ex. B. Mr. McCord also informed the Court that he had elected to waive his right to receive this military retirement pay, a taxable benefit, so that he could continue receiving full, untaxed monthly disability compensation from the VA of more than $1,200 as of October 2017. Pl.'s Mot. to Lift Stay & Req. for Further Proceedings at 2–3; Mem. in Supp. of Pl.'s Req. for Further Proceedings (Pl.'s Mem.) Ex. B at 2, ECF No. 63-2; see also 38 U.S.C. § 5304 (prohibiting the concurrent receipt of both VA and military retirement benefits). Mr. McCord complained, however, that the Army had established an overpayment against him in the amount of $25,877.60 based on the severance pay he had received. See Pl.'s Mot. to Lift Stay & Req. for Further Proceedings at 3–4. He also noted that the government had not yet addressed to his satisfaction his request for reimbursement of approximately $15,000 in out-of-pocket expenses that he had allegedly incurred as a result of not having TRICARE coverage, a benefit of military retirement. Id. at 3.

On April 23, 2018, the Court held a status conference to address the matters raised in Mr. McCord's March 21, 2018 motion. See Order, ECF No. 61. Based upon the discussion at that

---

[1] Every page of this motion is numbered four. The Court therefore cites to the pagination supplied by the Court's ECF system.

3

status conference, it became clear that the parties were unlikely to resolve the remaining issues Mr. McCord had raised without further involvement by the Court. Accordingly, the Court directed Mr. McCord to file a new RCFC 52.2(f) notice, setting forth with more specificity his concerns and the actions he was requesting the Court to take. Order, ECF No. 62.

Mr. McCord has now filed his notice, to which the government has responded. The case is therefore ripe for final disposition.

## DISCUSSION

**I. Back Pay Request**

In cases under the Military Pay Act, a "plaintiff is entitled to money in the form of the pay that the plaintiff would have received but for the unlawful [action]." Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003); see also Denton v. United States, 204 Ct. Cl. 188, 199 (1974) (noting that the military record corrections statute "entitles a complainant to nothing more than placement in the same position he would have been had no error been made" (citation omitted)); Kimmel v. United States, 196 Ct. Cl. 579, 591 (1971) ("The injustice was removed by placing plaintiff in the same position he would have been had no error been made. This was all that plaintiff was entitled to receive."); Dolan v. United States, 91 Fed. Cl. 111, 122 (2010) ("The correction is intended to put the servicemember in the same position had the injustice or error not occurred."); Barnick v. United States, 80 Fed. Cl. 545, 557–58 (2008) ("By correcting Mr. Barnick's record . . . the AFBCMR placed Mr. Barnick in the same position he would have been if the erroneous . . . determination had not been made. The AFBCMR was not required to do anything else."), aff'd, 591 F.3d 1372 (Fed. Cir. 2010).

In this case, therefore, Mr. McCord is entitled to receive a monetary award representing the difference between the benefits he actually received and those that he would have received had he been granted disability retirement in May 2012. DFAS concluded that—in light of his decision to waive his entitlement to military retirement pay so that he could continue to receive the more generous and non-taxable VA benefit payments—Mr. McCord would have received only $37.60 in military retirement pay, even had he been properly afforded a military retirement in 2012.[2] DFAS's determination, which follows the methodology set forth in the Department of Defense's Financial Management Regulations (at § 041002) was clearly correct and consistent with law.

Thus, 38 U.S.C. § 5304 provides as follows:

> Except as provided in section 1414 of title 10 or to the extent that retirement pay is waived under other provisions of law, not more than one award of pension, compensation, emergency officers', regular, or reserve retirement pay, or initial award of naval pension

---

[2] The $37.60 represents a pro rata portion of Mr. McCord's military retirement pay covering May 29, 2012 through May 31, 2012, the time period between his discharge and when he began receiving VA disability compensation. See Pl.'s Mem. Ex. B.

4

granted after July 13, 1943, shall be made concurrently to any person based on such person's own service or concurrently to any person based on the service of any other person.

38 U.S.C. § 5304(a)(1).

It is well established that, with exceptions not relevant here, this statutory provision precludes "retirees of the uniformed services . . . from receiving both their full retirement pay and VA benefits." Absher v. United States, 9 Cl. Ct. 223, 224 (1985) (citing predecessor statute, 38 U.S.C. § 3104 (1982)), aff'd, 805 F.2d 1025 (Fed. Cir. 1986). Under the statute, to continue receiving VA benefits, retirees must waive all or a portion of their military retirement pay as necessary. See id.; see also 38 U.S.C. § 5305; Pl.'s Mem. at 7 n.5. In this case, as noted, Mr. McCord elected to waive all of his military retirement pay so that he could receive his full VA benefits.

Notwithstanding the foregoing, Mr. McCord emphasizes that he did not actually receive any military disability retirement payments between 2012 and 2017. See Pl.'s Mem. at 11–12. Therefore, he argues, § 5304 has no application because any lump sum payment of military retirement pay that he might now receive would not be made "concurrently" with the VA payments he received in past years. See id.

This argument lacks merit. As described above, in determining the remedy to which Mr. McCord is entitled, the Court is required to reconstruct what would have occurred had he been granted a military retirement at the time of his separation from the Army. And there is no dispute that had Mr. McCord been granted disability retirement in 2012, he would not have received both his retirement pay and his VA benefits. Mr. McCord's approach would not restore him to the financial position he would have enjoyed but for the Army's failure to afford him a military disability retirement. Instead, it would provide him with a windfall by permitting the very "double-dipping" that the statute forbids where the veteran, like Mr. McCord, has a disability rating of less than 50 percent. See 38 U.S.C. § 5304; see also 10 U.S.C. § 1414(a).

In short, the Court rejects Mr. McCord's challenge to the methodology DFAS followed in calculating his entitlement to back pay. His request for a further award of back pay is therefore denied.

## II.     Recoupment of Severance Pay

Mr. McCord's next concern regards the potential recoupment of the severance pay he received in 2012. As previously noted, severance pay is only granted to those not receiving a military retirement. With his records corrected, it is thus undisputed that Mr. McCord is no longer entitled to the severance payment he received. Mr. McCord argues, however, that under 10 U.S.C. § 1174(h)(1), the Army may only recoup that severance pay by making deductions from future military retirement payments.[3]

---

[3] 10 U.S.C. § 1174(h)(1) states in pertinent part that:

Of course, Mr. McCord waived his entitlement to future military retirement benefits in order to continue receiving his VA benefits. It is therefore unclear how the method of repayment contemplated by § 1174(h)(1) could be effected. But in any event, the issues of whether or how the erroneous severance payment might be recouped are not ripe for review. Although DFAS has stated an intent to establish a debt against Mr. McCord, the government represents that it has not yet done so. Further, even if it decides to establish such a debt, and to initiate collection proceedings, the Department of Defense possesses the discretion to waive collection of the debt under Financial Management Regulation Vol. 16, Ch. 5, § 040805, whose purpose is "to provide relief as a matter of equity when warranted by the circumstances of the individual case."[4]

Of course, it is up to the Department of Defense whether to exercise its discretionary waiver authority in any particular instance. Nonetheless, the standard for doing so at least arguably appears to have been met here. As reflected in the Court's initial opinion in this case, Mr. McCord, a disabled veteran, spent several years navigating his way through the confusing bureaucracies at both the Army and the VA and then pursuing judicial review, all in order to obtain the 30% disability rating to which he was entitled. Numerous errors were made at the administrative level along the way. See McCord, 131 Fed. Cl. at 347–49. Mr. McCord obviously believed in good faith that he would improve his lot if he secured a correction of his records to reflect the appropriate disability rating. It was not until he had succeeded in his efforts that he discovered that, as a result of the correction, he had potentially incurred a debt of almost $26,000 and secured only $37.60 in back pay.

Notably, Mr. McCord's predicament does not appear to be unique. Mr. McCord's declarant, David Sonenshine, a senior staff attorney at the National Veterans Legal Services Program, observes that "most veterans do not understand the interplay between a military severance payment, medical retirement benefits, and disability compensation from the Department of Veterans Affairs." Decl. of David Sonenshine ¶ 5, ECF No. 64. Further, he notes that "[t]he interplay is especially confusing" where, as here, "there is an award of retroactive medical retirement to a veteran who years earlier received a severance payment from the military and is currently entitled to monthly disability compensation from the Department of Veterans Affairs." Id. Indeed, "[i]n [Mr. Sonenshine's] experience, veterans are not informed about the negative implications of a grant of retroactive medical retirement until after the decision granting this benefit is issued by the BCMR, BCNR, or PDBR." Id. ¶ 6. Mr. Sonenshine states that he has

---

> A member who has received . . . severance pay . . . and who later qualifies for retired or retainer pay under this title or title 14 shall have deducted from each payment of such retired or retainer pay an amount, in such schedule of monthly installments as the Secretary of Defense shall specify, taking into account the financial ability of the member to pay and avoiding the imposition of undue financial hardship on the member and member's dependents, until the total amount deducted is equal to the total amount of . . . severance pay . . . so paid.

[4] Available at https://comptroller.defense.gov/Portals/45/documents/fmr/current/16/16_04.pdf.

"seen many cases . . . in which veterans granted a retroactive military medical retirement are rendered worse off or no better off financially, due to the offset against VA compensation." Id.

In short, in the event that the Department of Defense establishes a debt, it appears to the Court that Mr. McCord will have strong arguments in favor of securing a waiver of that debt. As Mr. Sonenshine aptly observes, "[d]isabled veterans should not be put in a worse financial position when correcting a wrong that was due to no fault of their own." Id. ¶ 10. The Court would expect that if the issue arises, the Department of Defense will take that principle into consideration when determining whether to grant Mr. McCord a waiver. Mr. McCord's request for relief regarding the recoupment of severance pay is, accordingly, denied as not ripe.

### III.   TRICARE Issues

The final issues Mr. McCord raises in his request for further proceedings relate to the TRICARE coverage for which he became eligible as a result of his military retirement. First, he seeks reimbursement for the difference between the premiums he paid to purchase employer-based health insurance coverage for the years 2015 through 2017 and the premiums he would have paid had he been enrolled in TRICARE. See Pl.'s Mem. at 16. Second, he seeks reimbursement for co-payments and other out-of-pocket medical expenses he incurred in 2015, 2016, and 2017, for which he claims entitlement under TRICARE. The government opposes both requests.

For the reasons set forth below, the Court agrees that Mr. McCord is entitled to reimbursement for any extra costs he incurred to purchase insurance coverage during the years in question. On the other hand, the Court concludes that his remedy for recovering his co-payments and out-of-pocket medical expenses is to follow the claims and administrative procedures that govern the TRICARE program.

#### A.   The Difference Between the Costs of Enrolling in TRICARE and the Premiums Plaintiff Actually Paid to Secure Health Insurance Coverage

Section 1552 of Title 10 states in pertinent part that "[t]he Secretary concerned may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits . . . if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his . . . service." 10 U.S.C. § 1552(c)(1) (emphasis supplied). A "pecuniary benefit" is "a benefit capable of monetary valuation." Black's Law Dictionary (10th ed. 2014). The benefit Mr. McCord seeks—health insurance coverage under the TRICARE program at TRICARE premium rates—falls within this definition. In fact, recent case law indicates that DFAS has provided such reimbursement in similar circumstances where a plaintiff has secured correction of his records to reflect a military retirement. See Adams v. United States, 126 Fed. Cl. 645, 650–51, 660 (2016), aff'd, 696 F. App'x 511 (Mem.) (Fed. Cir. 2017).

Nonetheless, in this case, the government, citing Lord v. United States, 2 Cl. Ct. 749, 756 (1983), asserts that Mr. McCord "is not entitled to reimbursement for health insurance premiums." Def.'s Resp. to Pl.'s Mot. to Lift Stay & Req. for Further Proceedings at 13, ECF No. 67. But the government's reliance on Lord (which does not, in any event, bind this Court) is misplaced. In Lord, the court observed that "the plaintiff is entitled to recover for—and only

for—the monetary payments which he would have received if he had been placed by the Navy in a retired status on May 1, 1968." Lord, 2 Cl. Ct. at 756. Applying that principle, the court found that the plaintiff had not provided a basis for recovering the costs of paying insurance premiums, reasoning that "[t]he plaintiff has not referred the court to any statutory provision—and the court is not aware of any—under which the plaintiff would have been entitled to reimbursement from the Navy for medical insurance costs if he had been in a retired status on and after May 1, 1968." Id. By contrast, here, Mr. McCord would have been statutorily entitled to secure TRICARE coverage at prescribed rates if he had been placed in retired status in 2012. See 10 U.S.C. §§ 1071–1110b; see also 32 C.F.R. §§ 199.3(b)(1), 199.17(a)(6)(i)(C). The reasoning of the Lord case, therefore, supports Mr. McCord's position, not that of the government.

Mr. McCord has submitted pay stubs reflecting that he paid a total of $8,689.55 in premiums in 2015, 2016, and from January 1 through August 26, 2017, in order to secure coverage under his employer-sponsored health insurance plan. Pl.'s Mem. Ex. C, ECF No. 63-3. Mr. McCord also submitted a printout from TRICARE's website reflecting the annual enrollment fees for TRICARE Prime. See Pl.'s Mem. Ex. I, ECF No. 63-9. He asserts that had he been properly retired, he would have paid an annual enrollment fee of $538.56 for each of those years. Pl.'s Mem. at 16; see also Pl.'s Mem. Ex. I. The government has not taken issue with Mr. McCord's assertion. Accordingly, the Court finds that Mr. McCord would have paid a total of $1,615.68 in TRICARE Prime enrollment fees for 2015 through 2017 if he had been properly retired. Mr. McCord is therefore entitled to an award of $7,073.87, representing the amount he paid above and beyond the TRICARE enrollment fees for the years in question.[5]

### B.   Reimbursement for Co-Pays and Out-of-Pocket Medical Expenses

As noted, Mr. McCord's final claim is that the Court should award him reimbursement for co-payments and other out-of-pocket medical expenses he incurred in 2015, 2016, and 2017, for which he claims entitlement under TRICARE. But Mr. McCord's retroactive enrollment in TRICARE restored the benefit to which he would have been entitled had he been given a military retirement in 2012 and provides him with the right to seek reimbursement for the expenses at issue through that program. Further, at this point, Mr. McCord has failed to exhaust the applicable administrative procedures for securing benefits under TRICARE. In fact, counsel for Mr. McCord has submitted a declaration that describes his recent communications with TRICARE, including a phone call on May 11, 2018, in which a TRICARE representative explained that to pursue his claims for reimbursement, Mr. McCord must file a TRICARE Form DD 2642 along with supporting documentation. Decl. of Jason W. Manne ¶ 5, ECF No. 68-1. In his declaration, executed on June 4, 2018, counsel does not indicate whether he followed this advice or whether TRICARE has denied any claim for reimbursement of the relevant expenses. See generally Decl. of Jason W. Manne.

---

[5] Based on the TRICARE Prime information Mr. McCord provided, it is unclear to the Court why he asserts that he would have paid a $538.56 annual enrollment fee, rather than a fee of $520, assuming his retirement in May 2012. See Pl.'s Mem. Ex. I. But because Mr. McCord bases his calculation on the slightly higher $538.56 enrollment fee, the Court has used that amount as well.

8

Once Mr. McCord files the required documents, applicable regulations prescribe an administrative process for challenging TRICARE's denial of any of Mr. McCord's claims. See 32 C.F.R. § 199.10. And should TRICARE improperly deny any claim for reimbursement that Mr. McCord might file, he may avail himself of this administrative remedy, and any subsequent right to judicial review. See Adams, 126 Fed. Cl. at 661 (holding that plaintiff who claimed that he was wrongfully denied benefits by TRICARE must follow the administrative scheme set forth in DoD regulations for challenging TRICARE coverage determinations).

Finally, the Court notes Mr. McCord's concern that TRICARE may improperly deny his claims as untimely under TRICARE's rule requiring beneficiaries to make their claims within one year. 32 C.F.R. § 199.7(d); see also Reply Mem. in Supp. of Pl.'s Request for Further Proceedings at 11, ECF No. 68. The Court is not unsympathetic to this concern, but expects that counsel for the government will provide assistance by informing TRICARE that Mr. McCord's claims may not be denied on the ground that they were not submitted within one year of the date that the expenses were incurred. Cf. Decl. of David Sonenshine ¶ 8 (observing that in settling class action in Sabo v. United States, No. 08-899 (Fed. Cl.), the military services "agreed to inform Tricare of the identity of all class members and to inform TRICARE that requests for reimbursement could not be denied upon the basis that the request was not submitted within one year"). Accordingly, Mr. McCord's request for a monetary award to cover past out-of-pocket medical expenses is denied.

## CONCLUSION

For the reasons set forth above, the stay in this case is **LIFTED** and Mr. McCord's request for further proceedings is **GRANTED-IN-PART** and **DENIED-IN-PART**.

The Clerk is directed to enter judgment in Mr. McCord's favor in the amount of $7,111.47 and to close the case. Mr. McCord is entitled to his costs pursuant to RCFC 54(d)(1).

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge